Antonio Aviles Jr RR377071655US
P.O. Box 47272
Windsor Mill, Maryland [21244]



Rcv'd by:_____

USDC- BALTIMORE
'24 DEC 13 PM2:14

IN THE DISTRICT COURT OF

UNITED STATES FOR THE DISTRICT OF MARYLAND

Antonio Aviles Jr , 22

     Plaintiff(s),

  -AGAINST-

ARVEST CENTRAL MORTGAGE COMPANY,
ARVEST MORTGAGE LLC, BROCK & SCOTT,
PLLC , LENNAR MORTGAGE, LLC

Defendants.,

Case No.: MJM 2 4 CV 3 6 1 2

PETITION FOR ~~INJUNTIVE AND A~~ JA **INJUNCTIVE AND**
**DECLARATORY RELIEF**

---

Complaint under authority of 28 U.S.C. § 1332 and petition for injunctive and declaratory relief
pursuant to 28 U.S.C. § 2201

Statement of in personam jurisdiction

1. Antonio Aviles Jr  is domiciled in the state of MARYLAND within the geographic
   boundaries of the  Federal District of MARYLAND.  Antonio Aviles Jr's domicile is
   located at 7876 Johnnycake Rd  Baltimore, md 21244.,

2. LENNAR MORTGAGE, LLC

3.  ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC,
   BROCK & SCOTT, PLLC , is domestic to the state of ARKANSAS listing  a business
   address at 801 John Barrow Road Little Rock, AR 72205.  The parties enjoy complete
   diversity and the amount in controversy exceeds Four Hundred Eight Thousand Twenty
   Five Dollars  ($408,025.00).

Statement of subject matter jurisdiction

1. This Court has jurisdiction over the subject matter of this Complaint as the parties are diverse to one another, the controversy amount is sufficient, and the basic complaint arises under the state law of MARYLAND including predatory lending and collateral attacks on void judgments.

Statement of venue

1. Venue is appropriate in the Federal District of MARYLAND as the matter involves a Foreign Corporation.

Theory of the case

1. Antonio Aviles Jr shall show this Court that (LENNAR MORTGAGE, LLC) ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC, BROCK & SCOTT, PLLC , relative to Antonio Aviles Jr , perfected a judgment which was facially void, to wit:

    (a) ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC, BROCK & SCOTT, PLLC , failed to prove the first element of standing, that ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC, BROCK & SCOTT, PLLC . had access to prosecute an action in MARYLAND's state courts.

(b) ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC, BROCK & SCOTT, PLLC failed to prove the second element of standing by offering to proffer the original promissory note showing that ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC, BROCK & SCOTT, PLLC , Inc. is in *de facto* and *de jure* possession of the original promissory note.

(c) ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC, BROCK & SCOTT, PLLC , failed to prove the third element of standing by proffering authenticated business records, admissible through the business records exception to the hearsay rule and subject to cross-examination of the attesting witness.

2. Antonio Aviles Jr  was never served with any eviction notice after the foreclosure sale took place.

3. Antonio Aviles Jr has never received a Sheriff Notice to vacate the premises.

4. Antonio Aviles Jr  has resided at the premises 7876 Johnnycake Road for the past two years and the law office of  BROCK & SCOTT, PLLC has forwarded mail to this address in the past.

<u>Memorandums of law</u>

The United States Supreme Court examined the question in *Nashua and Lowell Railroad Corporation v. Boston and Lowell Railroad Corporation,*  10 S.Ct. 1004, 136 U.S. 356, 34 L.Ed. 363, 1890.SCT.40274 where the Supreme Court resolved the proposition: If a corporation existing under the laws of two States, and as much a citizen of one as of the other, is to be treated when sued either in the state court or in the Federal court of the State as a citizen of that State only on the ground that it cannot there be a corporation of any other State, then it necessarily follows that

when such a corporation brings a suit, either in the state courts or in the Federal court of one of the States, it must in like manner be treated as a corporation of that State only, because it cannot there be a corporation of any other State. **It is impossible to say that such a corporation cannot be sued in one of the States as a corporation of another State, and at the same time to say that it can sue in the State as a citizen of another State**. Specifically see *Nashua,* id. *supra* at pages 381, 382.

Feb. 22 (Bloomberg) -- Joe Lents hasn't made a payment on his $1.5 million mortgage since 2002. That's when Washington Mutual Inc. first tried to foreclose on his home in Boca Raton, Florida. The Seattle-based lender failed to prove that it owned Lents's mortgage note and dropped attempts to take his house. Subsequent efforts to foreclose have stalled because no one has produced the paperwork.

``If you're going to take my house away from me, you better own the note,'' said Lents, 63, the former chief executive officer of a now-defunct voice recognition software company.

Judges in at least five states have stopped foreclosure proceedings because the banks that pool mortgages into securities and the companies that collect monthly payments haven't been able to prove they own the [promissory notes]. The confusion is another headache for U.S. Treasury Secretary Henry Paulson as he revises rules for packaging mortgages into securities.

``I think it's going to become pretty hairy,'' said Josh Rosner, managing director at the New Jersey-based investment research firm Graham Fisher & Co. ``Regulators appear to have ignored this, given the size and scope of the problem.''

More than $2.1 trillion, or 19 percent, of outstanding mortgages have been bundled into securities by private banks, according to Inside Mortgage Finance, a Bethesda, Maryland-based industry newsletter. Those loans may be sold several times before they land in a security. Mortgage servicers, who collect monthly payments and distribute them to securities investors, can buy and sell the home loans many times.

Each time the mortgages change hands, the sellers are required to sign over the mortgage notes to the buyers. In the rush to originate more loans during the U.S. mortgage boom, from 2003 to 2006, that assignment of ownership wasn't always properly completed, said Alan White, assistant professor at Valparaiso University School of Law in Valparaiso, Indiana.

``Loans were mass produced and short cuts were taken,'' White said. ``A lot of the paperwork is done in the name of the original lender and a lot of the original lenders aren't around anymore.''

More than 100 mortgage companies stopped making loans, closed or were sold last year, according to Bloomberg data.

The foreclosure rate, at 1.69 percent of all U.S. homeowners, is the highest since the Mortgage Bankers Association began tracking it in 1993. The foreclosure rate for subprime borrowers, who have bad or incomplete credit and whose mortgages typically are securitized by private banks rather than government-sponsored entities Fannie Mae and Freddie Mac, is at a four-year high, according to the mortgage bankers.

More than 1.5 million homeowners will enter the foreclosure process this year, said Rick Sharga, executive vice president for marketing at RealtyTrac Inc., the Irvine, California-based

seller of foreclosure information. About half of them, 750,000, will have their homes repossessed, Sharga said.

Borrower advocates, including Ohio Attorney General Marc Dann, have seized upon the issue of missing mortgage notes as a way to stem foreclosures.

``The best thing to do is to keep people in their homes and for everybody to take steps necessary to make that happen,'' said Chris Geidner, an attorney in Dann's office. ``These trusts are purchasing these notes, and before they even get the paperwork, they foreclose on people. They become foreclosure machines.''

Lost-Note Affidavits: When the mortgage servicers and securitizing banks that act as trustees of the securities fail to present proof that they own a mortgage, they sometimes file what's called a lost-note affidavit, said April Charney, a lawyer at Jacksonville Area Legal Aid in Florida.

Nobody knows how widespread the use of lost-note affidavits are, Charney said. She's had foreclosure proceedings for 300 clients dismissed or postponed in the past year, with about 80 percent of them involving lost-note affidavits, she said.

``They raise the issue of whether the trusts own the loans at all,'' Charney said. ``Lost-note affidavits are pattern and practice in the industry. They are not exceptions. They are the rule.''

State laws generally make it difficult to foreclose because they favor the homeowner, said Stuart Saft, a real estate lawyer and partner at the New Jersey firm Dewey & LeBoeuf LLP.

``All these loan documents are being sent to the inside of a mountain in the middle of America and not being checked very carefully," Saft said. ``The lenders can't find the paper. We're dealing with a lot of paper produced in a mortgage closing."

Judges are becoming increasingly impatient with plaintiffs who produce no more proof of ownership than a lost-note affidavit or a copy of the note, said Michael Doan, an attorney at Doan Law Firm LLP in Carlsbad, California.

In Ohio, where RealtyTrac reported an 88 percent jump in foreclosures last year, Dann, the attorney general, is now arguing 40 foreclosure cases that challenge ownership of mortgage notes, according to his office.

U.S. District Judge David D. Dowd Jr. in Ohio's northern district chastised Deutsche Bank National Trust Co. and Argent Mortgage Securities Inc. in October for what he called their ``cavalier approach" and ``take my word for it" attitude toward proving ownership of the mortgage note in a foreclosure case.

John Gallagher, a spokesman for Frankfurt-based Deutsche Bank AG, said the bank had no comment.

Federal District Judge Christopher Boyko dismissed 14 foreclosure cases in Cleveland in November due to the inability of the trustee and the servicer to prove ownership of the mortgages.

Similar cases were dismissed during the past year by judges in California, Massachusetts, Kansas and New Jersey.

``Judges are human beings,'' said Kenneth M. Lapine, a partner at the Cleveland law firm Roetzel & Andress LPA. ``They no doubt feel the little guy needs all the help he can get against the impersonal, out of town, mega-investment banking company.''

U.S. Bankruptcy Judge Samuel L. Bufford in Los Angeles issued a notice last month warning plaintiffs in foreclosure cases to bring the mortgage notes to court and not submit copies.

``This requirement will apply because developments in the secondary market for mortgages and other security interests cause the court to lack confidence that presenting a copy of a promissory note is sufficient to show that movant has a right to enforce the note or that it qualifies as a real party in interest,'' the notice said.

Quick foreclosures benefit communities because properties in default lose value and homeowners in financial distress don't maintain their houses or pay real estate taxes, said Saft of Dewey & Leboeuf.

``When banks originally made the loans they used people's money from pension funds and savings accounts and they should be allowed to foreclose the loan as quickly as possible before the property depreciates in value any more,'' Saft said. ``The mortgage industry has been painted as the enemy when all they did was make loans to enable people to buy homes. Now there's less money available for new borrowers to buy homes and that's what's causing the value of homes to go down.''

Lents is former CEO of Investco Inc., a Boca Raton, Florida-based developer of voice recognition software. In 2002, the U.S. Securities and Exchange Commission sanctioned Lents

and others for stock manipulation, according to the SEC Web site. He lost his job, was fined and his assets were frozen. That's the reason he couldn't pay his mortgage, he said.

``If the homeowner doesn't object to the lost-note affidavit, the judge rubber-stamps it,'' Lents said. ``Is it oversight, or are they trying to get around the law?''

Washington Mutual spokeswoman Geri Ann Baptista said the bank had no comment.

``I can't believe the handling of notes is worse than it was five years ago,'' said Guy Cecala, publisher of Inside Mortgage Finance. ``What we didn't have back then were armies of attorneys out there looking for loopholes. People are challenging foreclosures and courts are paying a lot more attention to foreclosures than they ever did before.''

American Home Mortgage Investment Corp., the Melville, New Jersey-based lender that filed for bankruptcy last August, said it was paying $45,000 a month to store loan paperwork and petitioned U.S. Bankruptcy Judge Christopher Sontchi in Wilmington, Delaware, for the right to toss it all. Sontchi ruled last week that American Home Mortgage could charge banks from $3 to $13 a file to retrieve documents.

The home-loan industry has had a central electronic database since 1997 to track mortgages as they are bought and sold. It's run by Mortgage Electronic Registration System, or MERS, a subsidiary of Vienna, Virginia-based MERSCORP Inc., which is owned by mortgage companies.

No Tracking Mechanism: MERS has 3,246 member companies and about half of outstanding mortgages are registered with the company, including loans purchased by

government-sponsored entities Fannie Mae, Freddie Mac and Ginnie Mae, said R.K. Arnold, the company's CEO.

For about half of U.S. mortgages, there is no tracking mechanism: MERS rules don't allow members to submit lost-note affidavits in place of mortgage notes, Arnold said.

``A lot of companies say the note is lost when it's highly unlikely the note is lost," Arnold said. ``Saying a note is lost when it's not really lost is wrong – yeah, like a violation of 18 U.S.C. § 1962."

Lents's attorney, Jane Raskin of Raskin & Raskin in Miami, said she has no idea who owns Lents's mortgage note.

``Something is wrong if you start from what I think is the reasonable assumption that these banks are not losing all of these notes," Raskin said. ``As an officer of the court, I find it troubling that they've been going in and saying we lost the note, and because nobody is challenging it, the foreclosures are pushed through the system."

To contact the reporter on this story: Bob Ivry in New Jersey at bivry@bloomberg.net .

A conclusory affidavit is not competent summary judgment proof that the affiant is the owner or holder of a note. See Tex.R. Civ. P. 166a(f); Tex. Div.-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex.1994); Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex.1984); Geiselman, 965 S.W.2d at 537)(affidavit of vice president of assignee of promissory note that assignee was legal owner of notes allegedly transferred from FDIC and lost was incompetent summary judgment evidence where there was no testimony in affidavit to account for loss or

destruction of notes); *Jernigan, 803 S.W.2d at 777* (appellant's bare allegation of ownership of note with gap and inconsistency in chain of title held insufficient to establish ownership as a matter of law). Mills has thus failed to prove that he is the owner of the Leavings' note or, therefore, that he has the right to enforce it. Party seeking to go forward with foreclosure under deed of trust securing payment of promissory note must establish, inter alia, by competent evidence, existence of valid debt of which he is the holder. G.S. §§ 25-1-201(20), 45-21.16(d). A party seeking to go forward with foreclosure under a deed of trust securing payment of a promissory note must establish, *inter alia,* by competent evidence, the existence of a valid debt of which he is the holder. G.S. 45- 21.16(d); *In re Foreclosure of Burgess, 47 N.C.App. 599, 267 S.E.2d 915, appeal dismissed,* 301 N.C. 90 (1980). The Uniform Commercial Code defines a "holder" as "a person who is in possession of ... an instrument ... issued or indorsed to him or to his order...." G.S. 25-1-201(20); *see also Hotel Corp. v. Taylor and Fletcher v. Foremans, Inc.,* 301 N.C. 200, 271 S.E.2d 54 (1980). Possession is significant in determining whether a person is a holder, and the absence of possession defeats that status. *See In re Foreclosure of Connolly v. Potts,* 63 N.C.App. 547, 306 S.E.2d 123 (1983); *Liles v. Myers, 38 N.C.App. 525, 248 S.E.2d 385 (1978); see also* 1 Anderson, Uniform Commercial Code § 1-201: 105 through 116. A security interest in chattel paper or negotiable documents may be perfected by filing. A security interest in instruments . . . can be perfected only by the secured party's taking possession, . . ." (emphasis added) § 9305 also requires that only the secured parties, their agent or bailee can have actual possession of the *instruments* in order to perfect the security interest.

The district court also placed reliance on the fact that the assignment of the collateral notes and trust deeds had been recorded in the county where the land was located. The court felt that this "served as notice to all interested parties." (C.R. 127). While this may serve as notice to interested parties who check the county records, this is not sufficient notice to perfect a security interest in

pledged instruments, nor is it the type of notice intended or provided by the Uniform Commercial Code. Under the Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee. Had the drafters of the Uniform Commercial Code (or the California legislature, in adopting the U.C.C.) decided that filing an assignment of collateral notes secured by trust deeds in the county where the land is located was sufficient to establish perfection, it certainly was in their power to do so. However, they did not. Since the California Commercial Code and the U.C.C. require actual possession for perfection of the security interests in this case, the <u>district court erred by finding "constructive possession" as satisfaction for the perfection requirements.</u>" *In re Staff Mortgage and Investment Corp.*, 550 F.2d 1228 (9th Cir. 03/30/1977). See also: *Allegaert v. Chemical Bank*, 657 F.2d 495 (2nd Cir. 08/19/1980), *In re Maryville Savings & Loan Corp.*, 743 F.2d 413 (6th Cir. 09/12/1984), *In re Maryville Savings & Loan Corp.*, 760 F.2d 119 (6th Cir. 04/29/1985), *In re Golden Plan of California Inc.*, 829 F.2d 705 (9th Cir. 11/14/1986), *In re Staff Mortgage & Investment Corp.*, 625 F.2d 281 (9th Cir. 08/11/1980), *In re Bruce Farley Corp.*, 612 F.2d 1197 (9th Cir. 02/01/1980), In re Allen, No. 90-1980 (9th Cir. 12/04/1991), *In re Kennedy Mortg. Co.* 17 B.R. 957 Bkrtcy.N.J., 1982., and *In re Investors & Lenders, Ltd.* 156 B.R. 145, Bkrtcy.D.N.J.,1993.

In McCay v. CAPITAL RESOURCES COMPANY, LTD. 96-200 S.W.2d 1997 Where appellee apparently never possessed appellants' original note as provided in Ark. Code Ann. 4-3-309(a)(i) (Repl. 1991), but was required, even if it had, to have proven all three factors specified in 4-3-309(a) and did not do so, appellee could not enforce the original note's terms by the use of a copy; even if all three requirements in 4-3-309(a) had been proven, the trial court was still obligated to ensure that appellee provided adequate protection to the appellants from any future claim, and this, too, was not done.

First, as previously discussed, we mention the unfairness in these circumstances that, if a duplicate was allowed in place of the original note, the McKays could later be subjected to double liability if the actual holder of the note appeared. Next, we add that the Rules of Evidence are rules of the court involving legal proceedings, while the UCC is composed of statutes of law that established the rights and liabilities of persons. Again, as previously discussed, Capital Resources, as an assignee of the McKays' note, could not sue on the underlying debt the McKays owed to Landmark Savings. For Capital Resources to have prevailed in enforcing the McKays' note, it was required either to produce the original or satisfy the requirements for a lost negotiable instrument under 4-3-309(a) and (b). Because Capital failed to do either, we must reverse and remand.

Mortgage Securities Inc. v. Hartley LORD. No. 4D02-4051. July 23, 2003. Mortgagee by assignment brought foreclosure action. The Circuit Court, 15th Judicial Circuit, Palm Beach County, Edward Fine and John Wessel, JJ., entered summary judgment for mortgagor. Mortgagee appealed. The District Court of Appeal, Stone, J., held that mortgagee could not maintain cause of action to enforce missing promissory note or foreclose mortgage, in absence of proof that mortgagee or assignor ever had possession of note.

LORRAINE C. TILLMAN v. VIRGINIA SAVAGE SMITH (07/25/85) The purpose of the section is well expressed by commentator Carl W. Ehrhardt as follows: [21]  The drafters of the Code excluded from the general rule of admissibility of duplicates these documents because the possessor of the documents is the owner of the obligation that they represent and the party who may bring a cause of action based on the document. Therefore, the person who possesses the duplicate may not possess the cause of action. For example, if A makes a xerox copy of a promissory note and subsequently negotiates the original to B, under section

90.953(1), A, the transferor, is not able to sue on the xerox copy of the promissory note. [22]    Ehrhardt, Florida Evidence § 953.1 (2d ed. 1984). See also Lowery v. State, 402 So.2d 1287 (Fla. 5th DCA 1981). To fall under section 90.953(1), the agreement would have not only to evidence a right to the payment of money, but be "of a type that is transferred by delivery in the ordinary course of business with any necessary endorsement or assignment" (emphasis added).

Mason v. Rubin, 727 So.2d 283, 37 UCC Rep.Serv.2d 1087 (Fla.App. Dist.4 02/10/1999) Establishing a lost negotiable instrument is governed by a different statute, section 673.3091, Florida Statutes (1993). The latter statute contains more stringent requirements than the former, and the trial court correctly concluded that the husband did not satisfy section 673.3091

In FIGUEREDO v. BANK ESPIRITO SANTO No. 88-1808.Jan. 31, 1989. FL Third District. The plaintiff failed to produce for admission into evidence the original copy of a negotiable promissory instrument as is expressly required by section 90.953(1), Florida Statutes (1987).   For this reason, the final judgment of foreclosure is vacated with directions for the trial court to receive the original promissory note in evidence

In SMS Financial LLc. v. Abco Homes, Inc. No.98-50117 February 18, 1999 (167 F. 3d. 235; 5th Circuit Court of Appeals.) Where the complaining party can not prove the existence of the note, then there is no note. To recover on a promissory note, the plaintiff must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note.  Since no one is able to produce the "instrument" there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course. New Jersey common law dictates that the plaintiff prove the existence of the alleged note in question, prove that the party

sued signed the alleged note, prove that the plaintiff is the owner and holder of the alleged note, and prove that certain balance is due and owing on any alleged note. Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security. See Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th Cir 1977), "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389 (Bkrtcy.D.N.J.1994), Unequivocally the Court's rule is that in order to prove the "instrument", possession is mandatory. In addition to the note, another element of proof is necessary – an accounting that is signed and dated by the person responsible for the account. Claim of damages, to be admissible as evidence, must incorporate records such as a general ledger and accounting of an alleged unpaid promissory note, the person responsible for preparing and maintaining the account general ledger must provide a complete accounting which must be sworn to and dated by the person who maintained the ledger. See Pacific Concrete F.C.U. V. Kauanoe, 62 Haw. 334, 614 P.2d 936 (1980), GE Capital Hawaii, Inc. v. Yonenaka 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001), Fooks v. Norwich Housing Authority 28 Conn. L. Rptr. 371, (Conn. Super.2000), and Town of Brookfield v. Candlewood Shores Estates, Inc. 513 A.2d 1218, 201 Conn.1 (1986).

See § 90.953, West's Fla. Stat. Annot. (1979) (Sponsor's Note); C. Ehrhardt, Florida Evidence § 953.1, at 605 & n.5; Lowery v. State, 402 So.2d 1287, 1288-89 (Fla. 5th DCA 1981). 90.953(1), Florida Statutes, is misplaced. The purpose of that subsection is to require production of the original where there is an action on a negotiable instrument. In such instances, the original instrument must be brought forward both to demonstrate the right to payment and to preclude the

possibility that the instrument has already been negotiated. State Street sought to establish the promissory note and mortgage under section 71.011, Florida Statutes. State Street alleged that Hartley executed the note and mortgage and that, after multiple assignments, the documents were assigned to State Street by EMC Mortgage Corporation. Although State Street alleged in its pleading that the original documents were received by it, the record established that State Street never had possession of the original note and, further, that its assignor, EMC, never had possession of the note and, thus, was not able to transfer the original note to State Street. The trial court correctly concluded that as State Street never had actual or constructive possession of the promissory note, State Street could not, as a matter of law, maintain a cause of action to enforce the note or foreclose the mortgage. The right to enforce the lost instrument was not properly assigned where neither State Street nor its predecessor in interest possessed the note and did not otherwise satisfy the requirements of section 673.3091, Florida Statutes, at the time of the assignment. See Slizyk v. Smilack, 825 So. 2d 428, 430 (Fla. 4th DCA 2002). In Mason v. Rubin, 727 So. 2d 283 (Fla. 4th DCA 1999), the appellant brought a foreclosure action on a second mortgage, the trial court denied the foreclosure, and this court affirmed on the basis that the appellant had failed to establish the lost note under section 673.3091. Likewise, here, where State Street failed to comply with section 673.3091, the trial court correctly entered summary judgment denying its foreclosure claim.  In contrast, here, the undisputed evidence was that EMC, the assignor, never had possession of the notes and, thus, could not enforce the note under section 673.3091 governing lost notes. Because EMC could not enforce the lost note under section 673.3091, it had no power of enforcement which it could assign to State Street.

In RAYMOND E. SHORES AND MARCENE G. SHORES v. FIRST FLORIDA RESOURCE CORPORATION (10/11/72) - Appellants are entitled to assurance that they will not

later be sued by a holder of these instruments.... If there are parties having any claim to these instruments they should be brought into the action and the matter determined. The instruments should then be reestablished, recorded and an appropriate judgment entered.

No. 4-561 / 02-1889 Filed September 9, 2004 CHASE MANHATTEN MORTGAGE CORPORATION vs. LYNN E. GOODRICH and LEANA M. GOODRICH, Several of the separate contentions articulated by the Goodriches posit that the summary judgment record was insufficient to support the summary judgment and decree of foreclosure. Central to these contentions is the mistaken notion that a judgment of foreclosure could not be entered because Chase failed to produce the original of the promissory note. Iowa Rule of Civil Procedure 1.961 contemplates that judgment on a note may be entered without production of the original note if the court so orders. The district court did by order authorize the foreclosure despite Chase's failure to produce the original note. Thus, we conclude the summary judgment record was not insufficient to support the judgment of foreclosure despite Chase's failure to produce the original of the note. Our resolution of this issue is strongly influenced by the fact that the Goodriches make no contention that either Chase's Lost Note Affidavit or the foreclosure decree misstated any term of the promissory note. 247 U.S. 142; 38 S. Ct. 452;62 L. Ed. 1038 MARIN v. AUGEDAHL No. 227.  In Thompson v. Whitman, 18 Wall. 457, a decision obviously "rendered on great consideration," prior decisions dealing with the full faith and credit clause of the Constitution were carefully reviewed, and it was there decided that when the question of jurisdiction is appropriately presented the record of a judgment rendered may, constitutionally, be assailed in a collateral proceeding to enforce it in another State, even as to facts therein stated to have been passed upon by the court. This decision has been ] repeatedly affirmed and followed, and in National Exchange Bank v. Wiley, 195 U.S. 257, it was accepted as authority sufficient for holding that a judgment

by confession under warrant of attorney could be collaterally attacked in a foreign State by showing that the plaintiff in whose favor it was rendered in an Ohio court of general jurisdiction was not the owner of the note in suit at the time, and that the court entering it was, therefore, without jurisdiction, although the rendering of the judgment involved, or implied, the finding that the plaintiff was then the owner of the note...The taxation of the full value of the debts represented by these promissory notes deprived the executors and beneficiaries of the estate of their property without due process of law, and was in contravention of the Fourteenth Amendment...Promissory notes are only evidences of debt and not the debts themselves. Their situs, therefore, is not the situs of the debts; the situs of the debts is at the residence of one or the other of the parties to the relation. Buck v. Beach, 206 U.S. 392; Pelham v. Way, 15 Wall. 196. The situs of bonds appears to determine the situs of the debts they symbolize, but bonds have always been sharply distinguished from promissory notes in that regard. For certain purposes bonds have a peculiar recognition in the common law, and for purposes of taxation, annual or inheritance, are often treated as having a situs dependent [*4] upon their physical whereabouts. Matter of Bronson, 150 N.Y. 1; Matter of Fearing, 200 N.Y. 340; State Tax on Foreign Held Bonds, 15 Wall. 300. But the rule does not embrace promissory notes. Buck v. Beach, 206 U.S. 392, 403. This distinction between bonds and promissory notes has a historical basis. Selliger v. Kentucky, 213 U.S. 200, 204. A promissory note may be the subject of larceny. People v. Ogdensburgh, 48 N.Y. 390, 397; Buck v. Beach, 206 U.S. 407... In support of this position it was argued that if bonds were subject to taxation simply because of their presence within the jurisdiction it [*7] was due to the survival of primitive notions that identified the obligations with the parchment or paper upon which they were written, that bills and notes had a different history, and that there was no ground for extending the conceptions of the infancy of the race to them. It was pointed out that the power to tax simple

contracts depends upon power over the person of one of the parties and does not attach to documentary evidence of such contracts that may happen to be within the jurisdiction. Cases were cited in which this court has pronounced bills and notes to be only evidences of the simple contracts that they express, Pelham v. Way, 15 Wall. 196; Wyman v. Halstead, 109 U.S. 654, 656, and the precise issue was thought to be disposed of by Buck v. Beach, 206 U.S. 392. We shall discuss this case, but for the moment it is enough to say that for the purposes of argument we assume that bills and notes stand as mere evidences at common law. But we are bound by the construction given to the New Jersey statutes by the New Jersey courts, and the question is whether a statute that we must read as purporting to give to bills and notes within the State the same standing as bonds for purposes of taxation, goes beyond the constitutional power of the State. Again for the purposes of argument we may assume that there are limits to this kind of power; that the presence of a deed would not warrant a tax measured by the value of the real estate that it had conveyed, or even that a memorandum of a contract required by the statute of frauds would not support a tax on the value of the contract because it happened to be found in the testator's New Jersey strong box. But it is plain that bills and notes, whatever they may be called, come very near to identification with the contract that they embody. An endorsement of the paper carries the contract to the endorsee. An endorsement in blank passes the debt from hand to hand so that whoever has the paper has the debt. It is true that in some cases there may be a recovery without producing and surrendering the paper, but so may there be upon a bond in modern times. It is not primitive tradition alone that gives their peculiarities to bonds, but a tradition laid hold of, modified and adapted to the convenience and understanding of business men. The same convenience and understanding apply to bills and notes, as no one would doubt in the case of bank notes, which technically do not differ from others. It would be an extraordinary deduction from the Fourteenth Amendment to deny the

power of a State to adopt the usages and views of business men in a statute on the ground that it was depriving them of their property without due process of law. The necessity of caution in cutting down the power of taxation on the strength of the Fourteenth Amendment often has been adverted to. Louisville & Nashville R.R. Co. v. Barber Asphalt Paving Co., 197 U.S. 430, 434. Unless we are bound by authority, we think the statute, so far as we now are concerned with it, plainly within the power of the State to pass. As to authority, it has been asserted or implied again and again that the States had the power to deal with negotiable paper on the footing of situs. "It is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found, irrespective of the domicile of the owner; . . . Notes and mortgages are of the same nature . . . we see no reason why a State may not declare that if found within its limits they shall be subject to taxation." New Orleans v. Stempel, 175 U.S. 309, 322, 323. Bristol v. Washington County, 177 U.S. 133, 141. State Board of Assessors v. Comptoir National d' Escompte, 191 U.S. 388, 403, 404. Metropolitan Life Insurance Co. v. New Orleans, 205 U.S. 395, 400, 402. This is the established law unless it has been overthrown by the decision in Buck v. Beach, 206 U.S. 392.

In No. 45 1914.SCT.244 , 233 U.S. 434, 58 L. Ed. 1030, 34 S. Ct. 607 WHEELER v. SOHMER, COMPTROLLER OF THE STATE OF NEW JERSEY [10] Promissory notes are only evidences of debt and not the debts themselves. Their situs, therefore, is not the situs of the debts; the situs of the debts is at the residence of one or the other of the parties to the relation. Buck v. Beach, 206 U.S. 392; Pelham v. Way, 15 Wall. 196. As to the distinction between a debt and the evidence establishing it, see Wyman v. Halstead, 109 U.S. 654; Attorney General v. Bouwens, 4 M. & W. 171, 191; Hunter v. Supervisors, 33 Iowa, 376; Hanson's Death Duties (4th ed.), p. 239.

[12] A note is the representative of a debt as a warehouse receipt is the representative of personal property, but such a receipt cannot be taxed at the value of the goods on the theory that in some way it represents them. Selliger v. Kentucky, 213 U.S. 200. [16] The situs of bonds appears to determine the situs of the debts they symbolize, but bonds have always been sharply distinguished from promissory notes in that regard. [17] For certain purposes bonds have a peculiar recognition in the common law, and for purposes of taxation, annual or inheritance, are often treated as having a situs dependent upon their physical whereabouts. Matter of Bronson, 150 N.Y. 1; Matter of Fearing, 200 N.Y. 340; State Tax on Foreign Held Bonds, 15 Wall. 300. But the rule does not embrace promissory notes. Buck v. Beach, 206 U.S. 392, 403. This distinction between bonds and promissory notes has a historical basis. Selliger v. Kentucky, 213 U.S. 200, 204.  A promissory note may be the subject of larceny. People v. Ogdensburgh, 48 N.Y. 390, 397;  Buck v. Beach, 206 U.S. 407. At common law a promissory note was not within the law of larceny, Regina v. Watts, 6 Cox, C.c. 304, but certificates of stock, warehouse receipts and policies of insurance are unquestionably the subjects of larceny (Penal Law of New Jersey, 1909, c. 88), although none of them is the property whose situs determines the power of annual or of inheritance taxation. Matter of James, 144 N.Y. 6; Selliger v. Kentucky, 213 U.S. 200; Matter of Horn, 39 Misc. (N.Y.) 133.

In foreclosure of debt, the only relevant business record is the account and general ledger statement. For examples, see *Pacific Concrete F.C.U. V. Kauanoe*,  62 Haw. 334, 614 P.2d 936 (1980), *GE Capital Hawaii, Inc. v. Yonenaka* 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001), *Fooks v. Norwich Housing Authority* 28 Conn. L. Rptr. 371, (Conn. Super.2000), and *Town of*

*Brookfield v. Candlewood Shores Estates, Inc.* 513 A.2d 1218, 201 Conn.1 (1986). See also *Solon*

*v. Godbole,* 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 516 N. E.2d 1045 (3Dist. 1987).


## Statement in support of injunctive and declaratory relief

(1) The unwarranted eviction to take effect on or about an unknown date and illegal Foreclosure that took place on May 1, 2024 of the property located at 7876 Johnnycake Road Baltimore, Maryland [21244], will lead to loss of the abode of Antonio Aviles Jr.

(2) I, Antonio Aviles Jr , will be irreparably harmed by the loss of my property due to the illegal foreclosure and unwarranted eviction.

(3) ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC, BROCK & SCOTT, PLLC  will not be harmed by sustaining injunctive relief for and in favor of Antonio Aviles Jr  as ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC, BROCK & SCOTT, PLLC 's harm would be delayed possession.

(4) Denying Antonio Aviles Jr  injunctive relief imposes an imbalanced harm on Antonio Aviles Jr as Antonio Aviles Jr 's harm would be loss of abode.

(5) Granting Antonio Aviles Jr  injunctive relief is not in offense to public policy.

(6) Granting Antonio Aviles Jr  injunctive relief does not deprive this Court of means to repair ARVEST CENTRAL MORTGAGE COMPANY, ARVEST MORTGAGE LLC, BROCK & SCOTT, PLLC , if these proceedings ultimately go against Antonio Aviles Jr .

(7) Antonio Aviles Jr 's complaint and request for injunctive relief have a likelihood of winning due to the complaint's harmony with New Jersey's consumer law in re predatory lending.

## Verification

I, Antonio Aviles Jr , certify that the factual averments in the above and forgoing complaint and

petition are truthful and accurate to the best of my knowledge.

*Antonio Aviles Jr.* RR377071655US

Antonio Aviles Jr/Grantor Grantee Beneficiary